George ARMONDO, Jules V. Schwerin, Norman Weissman, Gene Searchinger, Harry Randall, Plaintiffs,

v.

Leslie URBACH, President of and the International Executive Board of Screen Directors International Guild, Defendants.

United States District Court
S. D. New York.
Dec. 16, 1964.

318

Arthur Kaplan, New York City, for plaintiffs.

Erwin Feldman, New York City, for defendants. Lester H. Prensky, New York City, of counsel.

WEINFELD, District Judge.

This is a motion by five plaintiffs, members in good standing of the defendant Screen Directors International Guild (hereafter referred to as the Guild), to restrain its International Executive Board [1] (hereafter referred to as the Executive Board) from proceeding with a hearing on charges of misconduct. In the event the charges are sustained, plaintiffs may be expelled, suspended, fined or otherwise disciplined. They seek both a preliminary and permanent injunction on the ground that the charges are in violation of their rights guaranteed under Labor's so-called "Bill of Rights." [2]

The charges rest upon the following telegram, relating to a proposed merger between the Guild and another labor organization, the Directors Guild of Ameri-

1. Composed of its elected officers and directors.

2. Labor-Management Reporting and Disclosure Act of 1959 §§ 101, 102, 29 U.S.C. §§ 411, 412.

ca, sent to the executives of the latter on November 7th, 1964:

"We understand that SDIG-DGA merger agreement near. Before taking final action, we strongly urge you to determine whether makeup of present SDIG Executive Board is in violation of Federal Labor Statute which prohibits management from sitting on Board of a labor union. SDIG Board contains members of Film Producers Association with which SDIG holds labor contract. Federal attention is being invited to this situation. A proper merger, negotiated by a properly constituted SDIG Board would have far greater chance of success and eliminate possible serious future DGA headaches."

The telegram, which was released to trade publications, bore no individual name, but was signed "Membership Information Group" of the Guild. The charges are directed against those who allegedly comprised the "Membership Information Group."

It appears that earlier this year, in March, fourteen members of the Guild, using the name "Membership Information Group," had opposed a similar proposed merger which thereafter failed of approval by the membership. Hence, the Executive Board presumed that the same fourteen, which included the five plaintiffs herein, sent or authorized the November 7th telegram relating to renewed merger negotiations. The Executive Board preferred charges against all fourteen, who were directed to appear on November 23rd to answer allegations that the telegram contained false and misleading statements and was intended to interfere with the Executive Board's function in the renewed merger negotiations, and the Guild's legal commitment under the contemplated merger which was subject to ratification by the membership of both groups. The Executive Board's resolution authorizing the charges designated the Guild's counsel as the hearing officer and further provided that after a full and complete hearing the charges were to be considered separately with respect to each of the fourteen, and to be determined by the Board in executive session. A temporary restraining order was issued in favor of the five plaintiffs herein and consequently the proceedings as to them were adjourned pending determination of this motion. However, three others of the fourteen appeared at the originally scheduled hearing on November 23rd and, upon their statements that they had no connection with sending the telegram, were exonerated by the Executive Board.[3]

The immediate question is whether the restraint upon the defendants from conducting the hearing upon the charges against these plaintiffs shall be continued or vacated.

The plaintiffs, admitting they were among the fourteen who constituted the "Membership Information Group" in March 1964, assert it was disbanded when the earlier merger plan was defeated and deny they sent or authorized the November 7th telegram. However, the plaintiffs resist offering their defense before the Executive Board on the ground that in authorizing the charges against them without first determining that in fact they were the senders of the telegram,[4] it has prejudged the matter, and that intra-union remedies would be futile since the same body which made the charges without investigation will sit in judgment upon them, at least initially. Plaintiffs further contend that the sole purpose of the charges is to punish them for their opposition to the merger in violation of their rights under Sections 101

---

3. Of the remaining six "Group" members, five withdrew from the hearing on the ground that the court order applied to them also, and the sixth obtained an adjournment for personal reasons.

4. But see Opp Cotton Mills v. Administrator, 312 U.S. 126, 152–153, 61 S.Ct. 524, 85 L.Ed. 624 (1941).

and 102 of the Labor-Management Reporting and Disclosure Act of 1959.[5]

■ The defendants deny these allegations of prejudgment and the alleged futility of internal union procedure. They point to the exoneration of the three "Information Group Members" who appeared before the Board to answer the charges. Indeed, the President of the Executive Board, a defendant, states that had the plaintiffs, instead of rushing into the courts, appeared before the union tribunal and there made their denials, they too would have been exonerated. Essentially the Board presses that this application is premature for failure to exhaust available union procedures, including an appeal from an adverse Executive Board ruling, if any. The Guild constitution permits an appeal to the annual membership meeting, next scheduled for May 1965. However, representations have been made to the Court that should the Executive Board after a hearing sustain the charges against the plaintiffs, a membership meeting will be convened within thirty days to permit an appeal by plaintiffs in accordance with the union's appellate procedure.[6]

Although this Court questions whether Section 101(a) (2) and the cases decided thereunder [7] permit the Guild to punish

---

5. 29 U.S.C. § 411 provides in part:

"(a) (2) Freedom of speech and assembly.—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

\* \* \* \* \*

"(4) Protection of the right to sue.—No labor organization shall limit the right of any member thereof to institute an action in any court \* \* \* *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof \* \* \*.

"(5) Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues \* \* \* unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

29 U.S.C. § 412 provides: "Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. \* \* \* "

6. Had defendants not agreed to expedite the intra-union appellate process, the exhaustion doctrine would not bar the maintenance of this suit, since the Act fixes a four-month ceiling for appellate review. Labor-Management Reporting and Disclosure Act of 1959 § 101(a) (4), 29 U.S.C. § 411(a) (4); Detroy v. American Guild of Variety Artists, 286 F.2d 75, 78 (2d Cir.), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961).

7. In Salzhandler v. Caputo, 316 F.2d 445, 451 (2d Cir.), cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963), which held that a union member may not be punished for uttering libelous statements concerning union officials' handling of funds, our Court of Appeals wrote: "The Congress has decided that it is in the public interest that unions be democratically governed and toward that end that discussion should be free and untrammeled and that reprisals within the union for the expression of views should be prohibited."

That the libertarian approach of Salzhandler is not to be confined to the context of union elections is demonstrated by Farowitz v. Associated Musicians, 330 F.2d 999 (2d Cir. 1964), where the Court prohibited punishing a union member who urged other members to stop paying dues which he reasonably believed to be unlawful.

those who may be found responsible for the telegram, that question need not now be decided since plaintiffs not only deny authorship or participation therein, but do not dispute that those who authorized the wire may properly be disciplined by the Guild. The sole issue on this motion is whether a preliminary injunction shall be granted to restrain the conduct of the hearing on the charges. The Court concludes that the rights of the plaintiffs can be adequately protected by permitting the union procedure to function and at this time there is no showing of need for a preliminary injunction pending a trial of the issues.

■ As a general rule, union members seeking to vindicate rights protected under Section 101 of the Act are required to exhaust reasonable internal union remedies before seeking judicial redress.[8] The basic Congressional policy is to require initial corrective action within the unions as part of the democratic process as long as reasonable and timely redress is available.[9] The exceptions come into play when this cannot be achieved or fundamental rights are violated. Unlike the situation in Detroy v. American Guild of Variety Artists,[10] the plaintiffs have not been suspended or expelled; they have been afforded on reasonable notice an opportunity for a hearing, but have resisted it; they have an avenue of appeal within thirty days if the charges should be sustained. Moreover, favorable action of the Executive Board itself or, failing that, by the entire membership upon appeal, will moot the plaintiffs' complaint.[11] The plaintiffs' assertion that remitting them to their own union procedure is a "futile gesture"[12] is at once negatived by the Executive Board's

dismissal of the charges against three of the "fourteen" group. And the membership body has shown itself independent of the Executive Board as evidenced by its rejection of the Board's recommendation of the first merger plan.

The plaintiffs here have not brought themselves within any of the exceptions which justify preliminary court interference before exhaustion of available union remedies.

■■ Finally, although the requirement of exhaustion may be dispensed with where "conceded or easily determined facts show a serious violation of plaintiff's rights,"[13] the plaintiffs have suffered no punishment, raise a defense which the union agrees and experience indicates results in exoneration, and concede the right of the Guild to punish those responsible for the telegram. While, as already noted, this Court questions the latter viewpoint, nonetheless, in view of these plaintiffs' position on that issue, the defense of the rights of those Guild members, if any, who may be the authors of the telegram should not rest with the plaintiffs.

The order temporarily restraining the Screen Directors International Guild and its Executive Board from conducting hearings on the charges preferred against the plaintiffs is hereby vacated, and the motion for a preliminary injunction is denied on condition that in the event any sanction is imposed upon the charges made against the plaintiffs, a membership meeting of the Guild shall be convened within thirty days to permit plaintiffs to appeal from the Executive Board's decision.

Settle order on two days' notice.

8. See Detroy v. American Guild of Variety Artists, 286 F.2d 75, 78 (2d Cir.), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961).

9. See Calhoon v. Harvey, 85 S.Ct. 292 (1964).

10. 286 F.2d 75 (2d Cir.), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961).

11. Cf. Detroy v. American Guild of Variety Artists, 286 F.2d 75, 79 (2d Cir.), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961).

12. Compare Farowitz v. Associated Musicians, 330 F.2d 999, 1002 (2d Cir. 1964).

13. Libutti v. Di Brizzi, 337 F.2d 216, 219 (2d Cir. 1964).