Joseph TIRINO, Walter Lynch, Alvina Canning and Alfred J. Brown, Plaintiffs,

v.

LOCAL 164, BARTENDERS AND HO-TEL AND RESTAURANT EM-PLOYEES UNION, AFL–CIO, Defendant.

No. 67–C–542.

United States District Court
E. D. New York.

April 15, 1968.

Godfrey P. Schmidt, New York City, for plaintiffs.

Robert J. Mozer, New York City, for defendant.

ZAVATT, Chief Judge.

The "FIRST CAUSE OF ACTION" is one for a declaratory judgment and an injunction brought by four former employees of Harry M. Stevens, Inc. (hereinafter Stevens), the restaurant concessionaire at Yonkers Raceway, under section 102 of the Labor-Management Reporting and Disclosure Act of 1959 (hereinafter the Landrum-Griffin Act), 29 U.S.C. § 412. The defendant has moved, before answer, for summary judgment on this claim.

From the papers before the court it would appear that Stevens has an exclusive concession at Yonkers Raceway and at Roosevelt Raceway; that the Racetrack Advisory Council, a duly constituted authority of the Hotel and Restaurant Employees and Bartenders International Union, entered into a collective bargaining agreement with Stevens, dated May 17, 1965, with respect to the rates of pay, hours of work and conditions of employment at the said concessions of Stevens; that this collective bargaining agreement was entered into in behalf of the defendant, Local 164, and Local 178; that Local 178 has jurisdiction of the employees of Stevens at Yonkers Raceway and Local 164 has jurisdiction of its employees at Roosevelt Raceway; that, on October 7, 1966, a number of the employees of Stevens, some of whom were members of Local 178 and some of whom were members of Local 164, engaged in a work stoppage at Yonkers Raceway; that Stevens claimed that this action was a violation of the said collective bargaining agreement, which contained a no strike clause "as long as the terms of this agreement are complied with by both parties hereto." Thereupon, Stevens instituted an action in the New York State Supreme Court, Westchester County, against those of its employees who had engaged and were engaging in the said alleged unlawful work stoppage. The said Supreme Court issued a preliminary injunction on October 31, 1966, restraining all of the defendants served therein (including Joseph Tirino), during the pendency of the said action, from

picketing in the vicinity of Yonkers Raceway; from causing any strike, work stoppage, slowdown, etc., among employees of Harry M. Stevens, Inc. or any other employer at Yonkers Raceway; from interfering with the operation of Harry M. Stevens, Inc. at Yonkers Raceway; from taking or attempting to take any action by inducing employees of Harry M. Stevens, Inc. to refrain from working for it; from taking any action to induce any customer or supplier to refrain from doing business with Harry M. Stevens, Inc.; from taking any action to persuade any person to refrain from delivering goods or commodities to or from Harry M. Stevens, Inc. or in any other manner interfering with the business of Harry M. Stevens, Inc. at Yonkers Raceway. Joseph Tirino, one of the plaintiffs in the action pending in this court, moved in the Appellate Division of the New York State Supreme Court, Second Judicial Department, for an order vacating the said preliminary injunction. This motion was denied on or about April 11, 1967. From the papers before this court it would appear that said action in the state court is pending undetermined and that the said preliminary injunction remains in full force and effect. The plaintiffs were and are members of Local 164.

Certain members of that union filed intraunion charges against the plaintiffs accusing them of having engaged in a wildcat strike on October 7, 1966; having intimidated approximately 100 members of Local 164 and Local 178 to walk off and remain away from their jobs; with having carried picket signs containing false and misleading statements and with having attempted to compel Stevens to vary the terms of the collective bargaining agreement between Stevens and the International Union, dated May 17, 1965. In the plaintiffs' answers to the charges they denied that they picketed; that they encouraged any fellow worker to strike or to refuse to work; that they intimidated any members of either Local 164 or Local 178; that they participated in a wildcat strike. They objected to many of the charges upon the ground that they were not specific. Thereafter the charging parties advised each plaintiff, in writing, as to what it claimed were "specifications to our charges." The defendant appointed a Trial Committee and, on May 4, 1967, notified each of the plaintiffs, in writing, that hearings on the union charges would be held on June 8, 1967, at 7 P.M., at union headquarters in Hempstead, Nassau County. After some of the plaintiffs (Tirino, Canning and Brown) received notice of the hearing they wrote to the defendant complaining that the charges were still not sufficiently specific. The union referred these letters to the Trial Committee. On the eve of the trial the attorney for the plaintiffs sent a telegram to the defendant advising it that he had instructed his clients "not to appear for trial on the unspecific charges" and advising the union further that "my clients have asked me to file in the U. S. District Court the Eastern District an action under Title WQ of the LMRDA and such suit was filed this day."

The complaint in the action pending in this court was filed on June 7, 1967. An amended complaint was filed September 11, 1967. In the "FIRST CAUSE OF ACTION" they seek a declaratory judgment that the union charges against them are "unlawfully unspecific." They also contend that they can not obtain a fair hearing because the defendant's Trial Committee is dominated by Anthony R. Amodeo, the secretary-treasurer of the defendant. They allege, further, that they have been disciplined by the union without a hearing. They allege that they "have exhausted all intra-union remedies available to them prior to institution of this action; and they have been unable to obtain any relief." They allege that they have been constructively suspended or expelled from the defendant union in violation of § 101(a) (5) of the Landrum-Griffin Act, 29 U.S.C. § 411(a)

(5).[1] Therefore, they seek an order of this court enjoining the defendant from violating the Landrum-Griffin Act. It is not clear from the complaint whether they seek to enjoin the defendant from conducting an intraunion trial against them or whether they also seek to enjoin the defendant from the various acts of discipline which they claim have already been imposed upon them by the defendant.

The defendant has moved for summary judgment upon the grounds that:

1. the charges are sufficiently specific;

2. the plaintiffs can obtain a fair intraunion hearing upon said charges;

3. the plaintiffs have not been "fined, suspended, expelled or otherwise disciplined" within 29 U.S.C. § 411(a) (5) and, therefore, have no right to institute this action under 29 U.S.C. § 412;[2]

4. the plaintiffs have not exhausted their intraunion remedies and, therefore, have no right to institute this action under 29 U.S.C. § 411(a) (4);[3]

5. the claimed acts of discipline did not occur; even had they occurred, they do not come within the meaning of "otherwise disciplined" under 29 U.S.C. § 411(a) (5).

*May this Action be Maintained Prior to the Intraunion Trial*

Defendant contends that the absence of union discipline on the pending charges is a bar to the claim in the complaint that the charges lack specificity and the claim that the Trial Committee is dominated by an allegedly biased secretary-treasurer. It contends that 29 U.S.C. §§ 411(a) (5) and 412 deprive the court of jurisdiction because the plaintiffs have not yet been tried and disciplined by the union. Section 412 speaks, in the past tense, of a person "whose rights * * * have been infringed" and section 411(a) (5) speaks of the right not to be "disciplined" without "written specific charges," "a reasonable time to prepare his defense" and "a full and fair hearing." The defendant contends that the past acts of discipline did not occur and that, therefore, none of their rights have been

1. 29 U.S.C. § 411
 § 411. Bill of rights; constitution and bylaws of labor organizations
 (a) (5) Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

2. 29 U.S.C. § 412
 § 412. Civil action for infringement of rights; jurisdiction
 Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

3. 29 U.S.C. § 411
 § 411. Bill of rights; constitution and bylaws of labor organizations
 (a) (4) Protection of the right to sue. —No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: *And provided further*, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

"infringed" and that they have not yet been disciplined on the pending charges.

Some courts support the defendant's contention that the absence of "discipline" by a union is a bar to a suit against it under sections 101(a) (5) and 102 of the Landrum-Griffin Act, 29 U.S.C. §§ 411(a) (5), 412. Kuykendall v. Local 1763, United Bhd. of Carpenters, 49 CCH Lab.Cas. ¶ 19,040 (D.Wyo.1964); Flaherty v. International Union, United Steelworkers, 41 CCH Lab.Cas. ¶ 16,517 (S.D.Cal.1960). See also Nix v. Fulton Lodge No. 2, Int'l Ass'n of Machinists, 262 F.Supp. 1000, 1002 (N.D.Ga.1967). Other courts consider the absence of union discipline as only one relevant factor in determining whether judicial relief may be obtained without having first exhausted intraunion remedies. Baron v. North Jersey Newspaper Guild, 342 F.2d 423 (3d Cir. 1965); Armondo v. Urbach, 236 F.Supp. 317 (S.D.N.Y. 1964); cf. Deluhery v. Marine Cooks and Stewards Union, 211 F.Supp. 529 (S.D. Cal.1962), such exhaustion of intraunion remedies being a presumptive but not an absolute prerequisite to a suit under the Landrum-Griffin Act, Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2d Cir.), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961).

▮▮▮▮ Declaratory relief in advance of a threatened suit, under appropriate circumstances, is available, Luckenbach S. S. Co. v. United States, 312 F.2d 545, 548 (2d Cir. 1963), as is injunctive relief, in advance of a threatened statutory violation. Swift & Co. v. United States, 276 U.S. 311, 326, 48 S.Ct. 311, 315, 72 L. Ed. 587 (1928). Indeed, section 103 of Landrum-Griffin, 29 U.S.C. § 413, provides that "Nothing contained in this subchapter shall limit the rights and remedies of any member of a labor organization under any State or Federal law or before any court * * *." This section was intended to preserve preexisting federal remedies. See H.R.Rep. No. 741, 86th Cong., 1st Sess. (1959), I Legislative History of the Labor Management Reporting and Disclosure Act of 1959 (hereinafter Legislative History) 759, 789, U.S. Code Cong. & Admin. News 1959, p. 2424. See also, II Legislative History 1233 (Remarks of Senator John F. Kennedy, a co-author of section 103, 29 U.S.C. § 413, and of Senator Holland).

Although the recent case of Navarro v. Gannon, 266 F.Supp. 601 (S.D.N.Y.), aff'd 385 F.2d 512 (2d Cir. 1967), involved a suit under 29 U.S.C. §§ 411(a) (2)[4] and 412 to enjoin a contemplated violation of the right of free speech afforded by 29 U.S.C. § 411(a) (2), it would seem to support the proposition that suits under 29 U.S.C. §§ 411(a) (5) and 412 are not automatically barred merely because they seek to restrain prospective violations of 29 U.S.C. § 411. There, the defendant union was enjoined from interfering with the conduct of the plaintiff local's meeting. The injunction restrained a threatened future violation of rights under Landrum-Griffin. In response to the contention of the defendant in Navarro that no injunction should be issued because there had not yet been an actual interference with the rights of free discussion and assembly, the Court of Appeals said:

"[S]urely we need not wait until the meeting is held and the members have

---

4. 29 U.S.C. § 411

§ 411. Bill of rights; constitution and bylaws of labor organizations

(a) (2) Freedom of speech and assembly.—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

been suppressed in the exercise of their statutory rights." 385 F.2d at 520.

■ This court holds that a suit seeking to vindicate rights under 29 U.S.C. § 411(a) (5) is not necessarily barred merely because the unlawful discipline proscribed by that section has not yet occurred.

### Must Plaintiffs Exhaust Intraunion Remedies?

■ 29 U.S.C. § 411(a) (4), which protects the right of a member of a labor organization to sue that organization or its officers, contains a proviso that "any such member may be required to exhaust reasonable hearing procedures * * * within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: * * *." Sound policy justifies this provision. It affords unions the opportunity to establish internal democratic practices, conserves judicial resources by affording internal union action which may render moot resort to the courts and affords an opportunity for a clarification of the issues through union appellate tribunals before resort to the courts. Detroy v. American Guild of Variety Artists, supra. Exhaustion of intraunion remedies, however, is not an absolute prerequisite to a suit under Landrum-Griffin. Each case depends upon its peculiar facts. Detroy v. American Guild of Variety Artists, supra. It is not required if resort to such remedies would be futile, as where, for example, the intraunion tribunal is predisposed adversely to the union member. Farowitz v. Associated Musicians, 330 F.2d 999 (2d Cir. 1964); Nix v. Fulton Lodge No. 2, Int'l Ass'n of Machinists, 262 F. Supp. 1000 (N.D.Ga.1967).

### Intraunion Procedure

Since the complaint and the affidavit of the plaintiff Tirino in opposition to the defendant's motion for summary judgment claim that their rights can not be vindicated without resort to the court because of the domination of the Trial Committee and the members of the defendant local by one or more officers of the defendant, it is appropriate to consider the intraunion procedure when charges are filed against a member of the union.

Article XI, Section 3 of the Constitution and By-Laws of the defendant provides:

"All charges, trials and appeals will be processed in accordance with the provisions as set forth in Article XX of the International Constitution."

The International Constitution provides, in substance, that a member of a local union against whom charges have been lodged shall be tried by a five member trial body "appointed by such subordinate body pursuant to its by-laws." Article XX, Section 6(a). There does not appear to be any provision in the constitution and by-laws of the defendant local as to how and by whom such a trial body shall be appointed. The affidavit of the president of the defendant states that a five member trial committee was elected by the members of the defendant to hear the charges against the plaintiffs. For the purposes of the motion before the court, it will be assumed that the members of this Trial Committee were duly appointed. The identity of the members of this Trial Committee and of the chairman to preside at the trial are not revealed in any of the papers before the court.

At the trial the chairman passes on all objections and establishes rules of decorum and procedure. Article XX, Section 8(a). This provision would appear to be broad enough to include objections to the charges as lodged. If a member is found guilty and a penalty is imposed by the trial body, its decision and penalty do not become effective unless they are approved or modified by the local union at its next regular meeting. Article XX, Section 9. Thus, a verdict of guilty found and a penalty imposed by the trial body do not constitute the disciplining of the charged member unless and until they have been approved or approved as modified by the

membership of the local union. Deluhery v. Marine Cooks and Stewards Union, supra.

There is a right of appeal "to the Joint Executive Board, if one exists." If no such Board exists, the appeal may be taken to the General President. If such a Joint Executive Board does exist, an appeal from its decision may be taken to the General President. Appeals from the decision of the General President may be taken to the General Executive Board. Appeals from that Board may be taken to the International Convention, Article XX, Section 11, subject to the provisions of Sections 12 and 13 of Article XX.

Article XX, Section 8(e) provides:

"When the accused fails to appear at a trial, the charges shall be assumed to be true * * *."

To support their contention that they cannot obtain a fair hearing before the union's Trial Committee and that that Committee is dominated by Mr. Amodeo, the secretary-treasurer of the defendant, the affidavits of the plaintiffs contain several allegations of fact. When Stevens moved in the state court for a preliminary injunction, that motion was supported by the affidavit of Mr. Amodeo in which he incorporated by reference the affidavit of the secretary-treasurer of Local 178 which alleged that some sixty employees of Stevens, including the plaintiffs Tirino and Canning, engaged in an unlawful work stoppage on October 7, 1966. This fact, they claim, indicates that Amodeo has already prejudged the plaintiffs. They also charged that the union has already disciplined them in the following respects:

1. the defendant collaborated with Stevens in procuring their discharge;

2. the defendant refused to process the grievances against Stevens which they, the plaintiffs, submitted in writing;

3. the defendant refused to make its hiring hall available to them;

4. the defendant pursued the plaintiffs to their new places of employment and induced their new employers to discharge them;

5. the defendant has disregarded their seniority rights by allowing other former employees of Stevens, with less seniority, to return to work for Stevens.

The affidavit of the plaintiff Tirino, sworn to August 14, 1967, contains recitals of fact as to what he claims occurred at a membership meeting held on March 6, 1967. It is claimed that a resolution was adopted, unanimously, that the charges against the plaintiffs should be specific; that if they were not made specific within ten days thereafter, the charges were to be deemed dropped. To support this statement, the plaintiffs have submitted the affidavits of eight members (in addition to that of Tirino) present at that meeting which support this allegation. When the minutes of the meeting of March 6, 1967, were read at the next general membership meeting held June 5, 1967, it is Tirino's contention that they contained no reference to the said resolution having been offered or adopted at the March meeting. Tirino's affidavit goes on to say that he objected to the minutes as read and requested the recording secretary to correct them; that a motion to accept the minutes as read was carried. Tirino's version of other incidents which he claims occurred at that June meeting raises questions of fact as what occurred there and as to the insulation of the membership from domination by the defendant's officers, including not only Amodeo but also its president, recording secretary and business agent, and raises a question of fact as to the bias of these persons against the plaintiffs.

 In support of the defendant's motion for summary judgment there are before the court only the two affidavits of the defendant's president, James J. Ward, and the affidavit of the defendant's labor chief, Frank Beggi. It is to be noted that there is no supporting or reply affidavit of Amodeo. The affidavits submitted by the defendant contain

only conclusory statements that the plaintiffs' allegations of Amodeo's bias and domination "are sham and frivolous and absolutely lacking any foundation in reality" ; that they are "window dressing" which "does not raise one iota of proof." On a motion for summary judgment, the burden rests upon the moving party to satisfy the court that there is no triable issue of fact, 6 Moore, Federal Practice ¶ 56.15 [3] (2d ed. 1965). This burden is not met by the conclusory statements in the moving affidavits.

■ The complaint and the affidavit of the plaintiff Tirino raise a triable issue of fact as to the likelihood of a fair, objective review by the membership of an adverse decision of the Trial Committee. The instant case differs from Armondo v. Urbach, 236 F.Supp. 317 (S.D.N.Y. 1964), in which the court refused to enjoin an impending intraunion trial. There, the court found, after a hearing on a motion for a preliminary injunction, that if the members were found guilty by the trial body they would have an effective right of review by the general membership; that the general membership could act independently of the union leadership; that the union leadership was not biased against the union members. Here there is an issue of fact as to whether the plaintiffs can obtain a fair hearing before the Trial Committee and as to whether it would be futile for the plaintiffs to seek to obtain a fair review by the membership.

■ Assuming that the plaintiffs may not be required to exhaust intraunion remedies at the Trial Committee and local membership levels, should they, nevertheless, be required to do so because of the appellate remedies available? 29 U.S.C. § 411(a) (4) speaks of exhausting reasonable hearing procedures "but not to exceed a four-month lapse of time * * *." This has been applied not only to trial but also to appellate intraunion procedures. See Parks v. International Brotherhood of Elec. Workers, 314 F.2d 886, 925 (4th Cir.), cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142

(1963); Carrol v. Associated Musicians, 235 F.Supp. 161, 171 (S.D.N.Y.1963). In Johnson v. Local 58, International Brotherhood of Elec. Workers, 181 F. Supp. 734, 737 (E.D.Mich.1960), a motion to dismiss a complaint on the ground that the plaintiff had not exhausted his intraunion remedies was denied because, inter alia, there was no showing of a time limit on the decision of union appellate bodies. In Harris v. International Longshoremen's Ass'n, 321 F.2d 801, 804 and n. 3–805 (3d Cir. 1963), there was uncontradicted testimony that the union appellate body customarily decided appeals on the same day it heard the same. There the court granted the defendant's motion to dismiss the complaint on the ground that the plaintiff had not exhausted his intraunion remedies because he could have obtained a decision by the appellate body within four months. In the instant case there is no evidence to indicate that the plaintiffs can exhaust their intraunion appellate remedies within four months after an adverse decision by the Trial Committee and an affirmance thereof by the membership of the defendant local.

### *"Discipline" Within 29 U.S.C. § 411(a) (5)*

■ The defendant contends that the allegations of the complaint as to "discipline" are insufficient within the meaning of 29 U.S.C. § 411(a) (5). It has been held that a union's "blacklisting" of its member by publishing his name on a "National Unfair List" constituted "discipline" within 29 U.S.C. § 411(a) (5). Detroy v. American Guild of Variety Artists, supra. See also Burris v. International Brotherhood of Teamsters, 224 F.Supp. 277 (W.D.N.C.1963). In the instant case the plaintiffs claim, in substance, that they were blacklisted by the defendant. For they allege that the defendant pursued them to their new places of employment and induced their new employers to discharge them. The defendant's response is the mere conclusory statement that the plaintiffs have not been disciplined.

Another instance of alleged "discipline" is the claimed refusal of the defendant to process the grievances of the plaintiffs against Stevens. A copy of these grievances is attached to the complaint. The plaintiffs claim that they presented the same to Stevens and to the defendant in January 1967. The defendant does not deny that these grievances were so presented and that they have not been processed. The defendant's response to this claim of "discipline" is the mere conclusory statement that the plaintiffs have not been disciplined. Such conclusory statements fall far short of the requirement of Fed.R.Civ.P. 56(e) that evidentiary facts must be offered in support of a motion for summary judgment. Union Ins. Soc. of Canton Limited v. William Gluckin & Co., 353 F.2d 946, 952 (2d Cir. 1965); Fowler v. Southern Bell Tel. & Tel. Co., 343 F.2d 150, 154 (5th Cir. 1965); Engelhard Industries Inc. v. Research Instrumental Corp., 324 F.2d 347, 351 (9th Cir. 1963), cert. denied, 377 U.S. 923, 84 S.Ct. 1220, 12 L. Ed.2d 215 (1964); 6 Moore, Federal Practice ¶¶ 56.15 [4], 56.22 [1] at 2363, 2808 (2d ed. 1965). It has been held that the failure of a union to secure employment for a member or to process his grievance is a deprivation of job rights but not of union membership rights and, therefore, not "discipline" within 29 U. S.C. § 411(a) (5). Lucas v. Kenny, 220 F.Supp. 188 (N.D.Ill.1963); Allen v. Armored Car Chauffeurs and Guards Local Union, 185 F.Supp. 492 (D.N.J. 1960). This distinction between employment rights and membership rights, for purposes of § 411(a) (5), has been rejected by the Second Circuit. "[W]e eschew the attempt to distinguish between 'employment' rights and 'membership' rights. We reaffirm *Detroy* and hold that under certain circumstances union interference with the employment opportunities of its members may constitute 'discipline' within Section 101(a) (5)." Figueroa v. National Maritime Union, 342 F.2d 400, 406 (2d Cir. 1965). Under the facts of that case, the court held that the refusal of the union to refer for employment certain of its members who, admittedly, had been convicted of violations of the narcotics laws was not "discipline" because the collective bargaining agreement between the union and various shipowners provided in substance that the union was not required to register as suitable for employment a seaman with a criminal record for the illegal possession or use of narcotics. However, the court went on to say:

"Had appellees disputed the fact of their convictions, the determination by the Union or its agent that they had been convicted would, of course, have constituted 'discipline' entitling the members to the procedural safeguards of Section 101(a) (5)." 342 F.2d at 406.

The plaintiffs claim that the five specific alleged instances of "discipline" by the union were based upon and the direct result of the predetermination by the union that the plaintiffs had engaged in a wildcat strike, which the plaintiffs vigorously deny. With the exception of the allegation that the defendant has refused to make its hiring hall available to the plaintiffs, the defendant asserts merely that the claimed acts of discipline do not constitute "discipline." The court holds that the claimed acts of discipline may be found to constitute "discipline" if the plaintiffs establish that these acts were committed on the basis of a predetermination that the plaintiffs had engaged in a wildcat strike. For the purposes of the defendant's motion, it cannot be said that, as a matter of law, they present no triable issue as to this aspect of their complaint.

As to the claim that the plaintiff Lynch has been denied the use of the union's hiring hall, the defendant has submitted the affidavit of its labor chief, Frank Beggi, who has held that position at all the times stated in the complaint. He alleges in his affidavit that the plaintiff Lynch has never been to the office of the labor chief to seek employment since October 6, 1966. Lynch has filed no counter-affidavit.

Beggi's statement of fact, therefore, must be taken as true. Americana of Puerto Rico, Inc. v. Kaplus, 240 F.Supp. 854 (D.N.J.1965), aff'd, 368 F.2d 431 (3d Cir. 1966), cert. denied, 386 U.S. 943, 87 S.Ct. 977, 17 L.Ed.2d 874 (1967).

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed.R.Civ.P. 56(e).

As to the claims by other plaintiffs that they have been denied the use of the union's hiring hall the affidavit of Beggi does not satisfy the court that there is no triable issue of fact.

Having decided that there are questions of fact as to whether the plaintiffs should be required to exhaust intraunion remedies (including an intraunion attempt to obtain greater specificity of the charges), it would be premature to decide now whether the charges comply with the specificity required by 29 U.S.C. § 411(a) (5).

The defendant is entitled to partial summary judgment as to the claim of the plaintiff Lynch in the "FIRST CAUSE OF ACTION" that he has been denied the use of the union's hiring hall. In all other respects the defendant's motion for summary judgment on the plaintiffs' "FIRST CAUSE OF ACTION" is denied.

The plaintiffs contend that the "SECOND CAUSE OF ACTION" is within this court's jurisdiction because it is pendent to the first claim. Defendant moves to dismiss this claim on the ground that this court lacks subject matter jurisdiction. In this second claim, plaintiffs reallege each and every allegation in the Landrum-Griffin claim, and in addition allege that at a membership meeting of Local 164 held March 6, 1967 a resolution was passed "to the effect that unless the officers or attorneys of Local 164 made the said charges [those relating to the wildcat strike] specific within 10 days after passage of such resolution, said charges would be considered or deemed waived or dropped for all purposes." Plaintiffs seek a declaratory judgment dismissing the charges on the ground that the aforesaid resolution has not been complied with. In order to prevail on this claim, if in fact these allegations do state a claim upon which relief may be granted, plaintiffs must prove that the said resolution was passed by the membership at the March 6, 1967 meeting, that it was not rescinded thereafter, and that the union has not complied with its terms. These very same factual questions will be considered by the trial court when it decides whether or not it would be futile for the plaintiffs to exhaust their intraunion remedies on the first claim because of the domination of the membership by officers of the defendant union. At this juncture, therefore, the court cannot say that it has no power to hear the second claim. UMW v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); United States for Use and Benefit of Mandel Bros. Contracting Corp. v. P. J. Carlin Constr. Co., 254 F.Supp. 637 (E.D.N.Y.1966). If it later appears that the substance of the second claim does not warrant the court's exercise of pendent jurisdiction, defendant may renew its motion to dismiss. UMW v. Gibbs, supra. The motion to dismiss the "SECOND CAUSE OF ACTION" is denied.

Settle an order consistent herewith on or before fifteen (15) days from the date hereof.