John **SHERIDAN** et al., Plaintiffs,

v.

**LIQUOR SALESMEN'S UNION, LOCAL 2, D.R.W. and A.W.I.U.A., AFL–CIO,** et al., Defendants.

No. 69 Civ. 2484.

United States District Court
S. D. New York.

July 18, 1969.

Godfrey P. Schmidt, New York City, for plaintiffs.

Victor Feingold, Stanley J. Reiben, New York City, for defendants.

## OPINION ON MOTION FOR SUMMARY JUDGMENT

MOTLEY, District Judge.

On June 9, 1969, plaintiffs, who are members of defendant local union, filed their complaint in this action. A first cause of action is predicated on § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (suits for violation of collective labor contract), and has nothing to do with the instant motions.[1] The second cause of action predicates jurisdiction on § 102 of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 412,[2] and claims violations of § 101(a) (1) (2) of LMRDA, 29 U.S.C. § 411(a) (1) (2) (Bill of Rights)[3] and it is to this cause that the motions are addressed.

On June 18, 1969, defendant local union and defendant local union officers noticed a union disciplinary hearing on amended charges (the original charges had been filed on June 2) against plaintiffs brought by two shop stewards. The hearing was to be on July 9, 1969, at 10:00 A.M.; however, immediately before that hour the court issued a temporary restraining order staying the hearing until plaintiffs' motions, including one for a preliminary injunction, could be determined but in any event for no more than ten days. Plaintiffs had brought their motions on for hearing on July 1, by order to show cause.

The disciplinary charges against plaintiffs arise out of the publication of an article by the "Joint Salesmen's Committee" (JSC), a dissident group to which plaintiffs belong within the local, entitled "Happy Ending to a Bad Happening" in JSC's Newsletter in May 1969. The text is set out below.[4] The

---

1. The complaint, however, apparently in error, refers to § 301 of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA).

2. 29 U.S.C. § 412. *Civil action for infringement of rights; jurisdiction.*
   Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

3. 29 U.S.C. § 411. (a) (1) *Equal rights.*
   Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
   (2) *Freedom of speech and assembly.*
   Every member of any labor organization shall have the right to meet and assemble freely with other members; and to ex-

press any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

4. "HAPPY ENDING TO A BAD HAPPENING
   Last fall, Mr. Harry Fallis, general manager of Pell Richards, announced that effective November 1, 1968, the company would pay their sales commissions based on posted off prices, not on the listed prices. This policy went into effect on that date and became a violation of our contract. Did the Shop Stewards, (pardon us, we mean Union Stooges) object to this announcement last November? They did not, nor did they utter one word to protect the men's earnings:
   These two phony stewards and Matranga handed the men their own money back and told them what a good job they

article is not a model of clarity to one uninitiated in the problems of the local, but apparently it refers to an employer having paid local members sales commissions on a "posted off price" as opposed to the "listed prices" in an alleged violation of the collective bargaining agreement. The article refers to the two shop stewards who now prefer charges as "Union Stooges", accusing them of doing nothing to rectify this claimed violation and of taking credit when JSC forced the employer to again pay commissions on listed prices.

For this criticism, the shop stewards charge plaintiffs with three violations of the local and international constitutions: 1) attempting "to injure the interests of their fellow members by intending to undermine their employment and earnings"; 2) undermining the solidarity of the members, fostering dissension without just cause, and reflecting discredit upon the union in injury of its purposes by interfering with the performance of its legal and contractual obligations by sending these damaging and derogatory statements to employers and customers; and 3) "engaging in conduct unbecoming a union member" by communicating matters relating to the internal affairs of the union to the outside world. The thirteen specifications that follow simply make it clear that the article is the basis of all of these charges and that plaintiffs intended all this harm claimed.

From the various papers submitted, it appears that plaintiffs intend to run for election to local union offices now held by defendants, and that plaintiffs are seeking through action in state courts to force a special membership meeting so that the local's constitution can be amended to provide for an early election (the next election is normally scheduled for January 1970). Plaintiffs claim maladministration of office on the part of defendants.

Plaintiffs' second cause of action asks that defendants be enjoined from pressing and further processing in any way these disciplinary charges, which are claimed to violate the "free speech" sections of LMRDA.[5] Plaintiffs also allege that they have no fair union remedy because of the hostility of defendants and because "past performance" indicates much delay. Plaintiffs now move: 1) to "vacate" these disciplinary charges, citing 29 U.S.C. § 411(a) (2) and (5); 2) to "forbid" defendants from processing these charges because no fair hearing can be had, citing 29 U.S.C. § 411(a) (5);[6] and 3) in the alternative, to stay processing of the charges until the issues raised in the complaint can be resolved. The first two motions ask, in effect, for the relief demanded in the second cause of action of the complaint,

had done for them. Truth of the matter is that the J.S.C. forced action indirectly, otherwise management and the Stewards would have said and done NOTHING.

Pressures forcing Peel Richards to pay according to contract, on the listed price were generated by the suggestion of legal action. This action put the Union in an embarrassing position where they HAD TO DO SOMETHING for a change. The salesmen in Peel Richards can thank members of the J.S.C. in their company for speaking up and helping us to help you.

This little true story has a happy three part moral for all concerned. (A) The salesmen are now being paid as they should be and they have received their back commissions. (B) The J.S.C. is always working and trying to help the men and succeeding. (C) The phony pretense of the two shop stewards, Red Wasserman and Bob Wolfson is over The men in Peel Richards know what these two stand for and whom they really represent."

5. *Supra,* fn. 3.
   29 U.S.C. § 411(a) (1, 2).

6. 29 U.S.C. § 411(a).
   (5) *Safeguards against improper disciplinary action.*—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (a) served with written specific charges; (b) given a reasonable time to prepare his defense; (c) afforded a full and fair hearing.

and are, therefore, motions for summary judgment, Rule 56, Fed.R.Civ.P. The third motion is one for a preliminary injunction, Rule 65, Fed.R.Civ.P., in the event that the first two are denied. Defendants filed in court a cross motion to dismiss the second cause of action under Rule 12(b), Fed.R.Civ.P.[7]

■ Summary judgment is not proper insofar as the second cause of action is based on 29 U.S.C. § 411(a) (5). There are factual issues involved in the determination of the fairness of the union disciplinary procedure, such as the existence of bias in individual defendants and the relationship of individual defendants to the disciplinary procedure.

■ A preliminary injunction is likewise not proper insofar as the claims are based on § 411(a) (5). The court arguably has no jurisdiction under 29 U.S.C. § 412[8] to hear a claim for injunctive relief alleging a violation of § 411(a) (5) prior to any discipline being imposed. Subsection (5) provides procedural rights to one "fined, suspended, expelled, or otherwise disciplined", and it may be that no right can be infringed within the meaning of § 412 until discipline has been imposed. Flaherty v. International Union, United Steelworkers of America, AFL–CIO, 41 CCH LABOR CASES ¶ 16,517 (S.D.Cal., C.D., 1960). One District Court in this Circuit has recently disagreed, in effect, although no preliminary injunctive relief was asked, Tirino v. Local 164, Bartenders and Hotel and Restaurant Employees Union, 282 F.Supp. 809 (E.D.N.Y.1968). At any rate, it is uncertain whether the court would have jurisdiction to enjoin a union disciplinary hearing from commencing in alleged violation of § 411(a)

(5), and, since plaintiffs have no probability of success at trial on this theory, the denial of preliminary injunctive relief insofar as subsection 5 is proper, American Visuals Corp. v. Holland, 261 F.2d 652 (2d Cir.1958).

Plaintiffs' reliance on 29 U.S.C. § 411(a) (2) as a basis for his motions poses two questions: 1) is the article, upon which the disciplinary charges against plaintiffs are concededly founded, within the protection of § 411(a) (2), and 2) if so, may plaintiffs enjoin the commencement of any union disciplinary proceedings based on this article? The court finds that there is no genuine material issue of fact with respect to either of these questions, and that summary judgment is therefore proper for one of the parties, Rule 56, Fed.R.Civ.P.

■ The first question is easily resolved. This Circuit has uniformly held that statements, such as plaintiffs published, concerning union affairs, including comments about the conduct of union officials, fall within the protection of § 411(a) (2), whether or not they are defamatory or malicious. Giordani v. Upholsterers International Union of North America, 403 F.2d 85 (2d Cir. 1968); Cole v. Hall, 339 F.2d 881 (2d Cir.1965); Farowitz v. Associated Musicians of Greater New York, 330 F.2d 999 (2d Cir.1964); Salzhandler v. Caputo, 316 F.2d 445 (2d Cir.1963). Outside this Circuit, one court has even held that a threat may be protected if uttered in the proper context, Kelsey v. Philadelphia Local 8, International Alliance of Theatrical Stage Employees, 294 F.Supp. 1368 (E.D.Pa.1968). "The LMRDA of 1959 was designed to protect the rights of union members to discuss freely and criticize the management of their unions

7. The defendants move to dismiss the second cause of action pursuant to Rule 12(b) Fed.R.Civ.P. "for insufficiency". Insofar as this motion concerns 29 U.S.C. § 411(a) (2), it would seem to be for failure to state a claim upon which relief can be granted, Rule 12(b) (6). Defendant Brandenburg submits an affidavit (executed in a state action) admitting the article in question to be the basis of the

charges against plaintiffs and admitting plaintiffs' position as potential election candiates in an election to be held no later than next January. The court is disposed to treat this as a motion for summary judgment on the second cause of action, Rule 12(b), Fed.R.Civ.P. *Supra* fn. 2.

8. 29 U.S.C. § 412.

and the conduct of their officers." Salzhandler v. Caputo, *supra* 316 F.2d at 449–450.

Defendants attempt to bring the charges within the proviso to subsection 2, which allows unions to enforce reasonable rules as to the responsibility of a member to the organization as an institution and as to the prevention of interferences with the performance of union contracts and legal obligations, by claiming that the plaintiffs intended to interfere with current collective bargaining and create dissension at a time when unity was essential to negotiating new contracts. A similar argument was made in the *Giordani* case, *supra*, in which defendants had the added factor that the letter in question had referred to misappropriation of funds by the union generally. The Court of Appeals rejected the argument, noting that "[i]f unions could discipline such speech on the ground that it weakened their power as an institution, this safeguard would be rendered entirely ephemeral and ineffectual." *Supra*, 403 F.2d at 89–90. Similarly, in Salzhandler v. Caputo, *supra*, 316 F.2d at 451, the court remarked to a claim such as defendants make: "The union argues that there is a public interest in promoting the monolithic character of unions in their dealings with employers. But the Congress weighed this factor and decided that the desirability of protecting the democratic process within the unions outweighs any possible weakening of unions in their dealings with employers which may result from the freer expression of opinions within the unions."

The union, then, has no power to discipline plaintiffs on charges arising out of the publishing of this article. Must plaintiffs undergo the disciplinary hearing, nonetheless, in the hope that either the hearing panel or a union appellate panel will dismiss the charges? The principle of exhaustion of available union remedies is found within the LMRDA, Title I, as 29 U.S.C. § 411(a) (4).[9] This subsection has been held applicable to suits brought for any violations of rights claimed under § 411, Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2d Cir.1961), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L. Ed.2d 388.

However, subsection (4) says only that a union member "may" be required to exhaust union remedies prior to suing the union. In *Detroy, supra*, 286 F.2d at 78, the court held that it determines whether and when union remedies must be exhausted, and that " * * * the federal courts may develop their own principles regarding the time when a union's action taken in violation of [§ 411] is ripe for judicial intervention."

The *Detroy* court found a Congressional policy to permit unions to correct their own wrongs so that initiative and honest and democratic procedures might flourish within the union. It found two fundamental reasons for the exhaustion doctrine. The first is conservation of judicial resources. If the union procedures vindicate the rights of members, they may not need to come to court at all. The second might be termed union expertise. Union tribunals may well assist a court

---

9. 29 U.S.C. § 411(a).

(4) *Protection of the right to sue.—* No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legisla-

tor: *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: *And provided further*, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

eventually brought into the controversy by interpreting union rules and procedures and by defining the problems. The *Detroy* court held that these principles might be applied only by considering a given case on its own facts, *supra*, at 79.

In *Detroy* the plaintiff had been placed on a union blacklist for refusing to abide by the arbitration decision in a dispute with a hotel, to which dispute and arbitration the union was not a party. The court upheld plaintiff's claim that this blacklisting was a form of discipline, given him without the procedural safeguards of 29 U.S.C. § 411(a) (5), and held that he need not exhaust any union remedies (they were uncertain) where the violation of federal law was clear and undisputed, and the injury immediate and difficult to compensate by a subsequent damage award, *supra*, at 81.

The theory that where the violation is clear, there are strong reasons for not requiring exhaustion of union remedies, was accepted also in Libutti v. Di Brizzi, 337 F.2d 216 (2d Cir.1964), affirmed on rehearing, 343 F.2d 460 (2d Cir.1965). The court found on first hearing that nominating restrictions by defendant union officers denied plaintiffs' equal right to nominate under 29 U.S.C. § 411(a) (1), that they were, therefore, "void", and plaintiffs were entitled to injunctive relief prior to the election. "When conceded or easily determined facts show a serious violation of the plaintiff's rights, the reasons for requiring exhaustion are absent: the commitment of judicial resources is not great, the risk of misconstruing procedures unfamiliar to the court is slight; a sufficient remedy given by the union tribunal would have to approximate that offered by the court." *Supra*, 337 F.2d at 219. Thus, where the violation of rights is clear, the two principal reasons for requiring exhaustion of union remedies fail because the court need spend little time on the applicable law and would not be materially assisted by union tribunals. On rehearing, the *Libutti* court questioned its interpretation of § 411(a) (1) after Calhoon v. Harvey, 379 U.S.

134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), but affirmed its view of exhaustion of remedies.

■ In the instant case, the protection of 29 U.S.C. § 411(a) (2) as far as plaintiff's article is concerned is beyond question, as seen above. Therefore, little exertion of judicial resources is required. The court would not benefit from union tribunals passing upon the problem; in fact, the union remedy could be no different than the court's to be acceptable, i.e., the barring of prosecution of these charges. The threatened injury to plaintiffs is immediate and probably of such a nature that damages would be inadequate relief. Plaintiffs are to be candidates for election to union office in the near future (the precise time will be determined by the success or failure of their state suits). If they are publicly fined, their campaigns could be immeasurably harmed. No monetary damages could be fixed to measure the harm of election scandals. Even if acquitted by higher union tribunals, plaintiffs' campaigns would no doubt suffer some harm. It is common knowledge that charges alone, even if publicly disproved, have been used by politicians to swing votes. If plaintiffs are suspended, barred from holding office, or expelled, the damage would be even greater whatever the potential for vindication on appeal. Also, the likelihood that plaintiffs would then be forced into this court again, without exhausting union appeals, would be high since plaintiffs' participation in the election would probably demand rapid nullification of these penalties. In short, the court sees no reason to require plaintiffs to exhaust union remedies by submitting to a union hearing on these groundless charges.

■ Defendants appear to argue from Flaherty v. Steelworkers, *supra*, that this court is without subject matter jurisdiction to grant an injunction at this stage. The problem arises because 29 U.S.C. § 412 grants the court jurisdiction only where rights guaranteed by

§ 411 "have been infringed." *Flaherty* involved § 411(a) (5), and, as indicated above, subsection (a) (5) procedural rights appear to apply only where there has been punishment. There may be valid reasons for this. It would be difficult to evaluate the fairness of a hearing prior thereto. However, subsection (2) merely gives the rights of free speech and assembly without stating when they are infringed. This Circuit has clearly held that the courts have the power to enjoin threatened violations of this subsection, Navarro v. Gannon, 385 F.2d 512 (2d Cir.1967), cert. denied, 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294, reh. denied, 390 U.S. 1046, 88 S.Ct. 1634, 20 L.Ed.2d 310. "Here we deal instead with a threatened invasion of the members' right of free discussion * * *", *supra*, 385 F.2d at 520. That court enjoined any take-over by the parent union of the local's meeting. Whether that court acted on the theory that it had the power under § 412 to block an unmaterialized but threatened infringement of free speech, see Tirino v. Local 164, *supra*, or on the theory that infringement was complete with the threat because speech was then inhibited, see Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965), is of no concern here. The court clearly has the power to enjoin this hearing.

In the only cases the court has found denying injunctive relief where the posture of the case was similar to that of the instant case, the courts assumed they had the power to enjoin, but merely declined to exercise it. Both cases are factually distinguishable. In Baron v. North Jersey Newspaper Guild, Local 173, American Newspaper Guild, AFL–CIO, 342 F.2d 423 (3rd Cir.1965), the court called plaintiff's suit "premature" where no discipline had yet been imposed and declined to render injunctive relief where no exceptional circumstances were demonstrated or alleged. In the instant case, the position of plaintiffs as prospective candidates for union office is such an exceptional circumstance.

Judge Weinfeld of this Court denied a preliminary injunction in Armondo v. Urbach, 236 F.Supp. 317 (S.D.N.Y. 1964), requested to block a union disciplinary hearing. However, the plaintiffs' defense to the union charge was that they had not sent the telegram in question (claiming defendant union's board to be made up in violation of federal law), a union trial panel had already dropped charges against three parties making the same claim, and plaintiffs did not challenge defendant's right to punish whoever sent the telegram (they claimed they were being tried by the union in violation of § 411(a) (2) because of their opposition to merger with another union). Judge Weinfeld, noting that he questioned the union's right to try whoever sent the telegram, said, *supra*, at 321: "* * * nonetheless, in view of plaintiffs' position on that issue, the defense of the rights of those Guild members, if any, who may be the authors of the telegram should not rest with plaintiffs." In other words, the injunction was denied because plaintiffs had a likely factual defense and refused to argue the free speech claim on which the facts were settled.

The court holds that where prospective candidates for union elections face union disciplinary hearings based on charges clearly void under 29 U.S.C. § 411(a) (2), the court has the power to enjoin these hearings under 29 U.S.C. § 412 and will so enjoin the hearings without requiring plaintiffs to exhaust union remedies, 29 U.S.C. § 411(a) (4). Final injunctive relief is proper because the plaintiffs have no adequate remedy at law.