**Joseph DUFFY, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 134, and International Brotherhood of Electrical Workers, Defendants.**

**No. 91 C 4700.**

United States District Court, N.D. Illinois, E.D.

Dec. 5, 1991.

Judson H. Miner, Davis, Miner, Barnhill and Galland, P.C., Chicago, Ill., Charles J. Barnhill, Sarah E. Siskind, Davis, Miner, Barnhill & Galland, P.C., Madison, Wis., for plaintiff.

Stephen Jay Feinberg, Marvin Gittler, Asher, Gittler, Greenfield, Cohen & D'Alba, Solomon I. Hirsh, Chicago, Ill., Laurence J. Cohen, Robert D. Kurnick, Sherman, Dunn, Cohen, Leifer & Yellig, Washington, D.C., for defendants.

### MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

#### Introduction

Joseph Duffy has sued the International Brotherhood of Electrical Workers, No. 134 ("Local 134") and its parent organization, the International Brotherhood of Electrical Workers ("IBEW") for allegedly violating his rights as a union member. His one-count complaint alleges that the Defendants have violated §§ 101(a)(1), (2) and 609 of the Labor Management Reporting and Disclosure Act ("LMRDA"),[1] 29 U.S.C. §§ 411(a)(1), (2) and 529. § 102 of the LMRDA, 29 U.S.C. § 412, creates a civil action for the violations alleged. IBEW has filed an answer but Local 134 has

---

1. Throughout this opinion, unless otherwise specified, section numbers will refer to sections of the LMRDA and not to the section numbers codified in the United States Code.

moved pursuant to Rule 12(b)(6) to dismiss the action against it. For reasons stated herein, Local 134's motion to dismiss is denied.

### Background [2]

Local 134 represents over 7000 construction electricians in the Chicago metropolitan area. IBEW is the parent organization of Local 134 and has ultimate authority to take control of the local's affairs.

Plaintiff Duffy was an active member of Local 134 from 1945 to 1990. Beginning in the early 1960s, he served in various elected and appointed offices for the local and its associated organizations, including serving simultaneously as chairman of the local's executive board (an elected position) and as business representative (an appointed position) in the spring of 1990—prior to his ouster.

Throughout Duffy's career with Local 134, and presently, the local has been responsible for issuing working credentials, certifying journeymen electricians and operating an exclusive job referral system for union electrical contractors and union electricians. Unless issued a journeyman card (known also as an "A" card), an apprentice card, or an "A" probationary permit by Local 134, an electrician may not work for a union contractor.

Under Local 134's bylaws, and in practice, there have been only three means by which an electrician can obtain full journeyman status and an "A" card. Those three means are (1) completing an apprenticeship program, (2) passing a test after working 4,000 hours for a union contractor (or 6,000 hours for more than one contractor), or (3) remaining in the employ of a newly organized, formerly non-union employer for whom the electrician had previously worked for at least a year. In addition, all job referrals of certified electricians are to be made by the local's seniority board.

In November, 1988, at a meeting of the Electrical Insurance Fund, it was disclosed that $350,000 had been paid out to Local 134 members in supplemental unemployment benefits even though the Fund's records showed that there were no electricians out of work. At that time, Duffy was a trustee of the Fund and he, along with another trustee, was asked to investigate the discrepancy. In the course of his investigation, Duffy interviewed officials of the Local 134 seniority board and learned that at least 1,000 electricians were working in the industry who had obtained their "A" cards directly from the union's executive board without having satisfied one of the three requirements for obtaining "A" cards.

Duffy informed James Conway, IBEW's vice-president, of the fact that over 1,000 electricians had illicitly obtained "A" cards. The finding was also reported at the local's April, 1989 membership meeting. The membership then passed a resolution to establish a special committee to investigate the improper issuance of "A" cards by Local 134's executive board. Duffy was one of five members appointed to the special investigative committee.

In what seems to be a classic example of the fox guarding the hen house, two of the five members of the special investigative committee declined to participate in the investigation. One of them was Tim Bresnahan who at the time was Local 134's Business Manager. The other was an individual identified in the complaint as "Dunne" who was allegedly a "key player" in the scheme to wrongfully issue "A" cards.

Local 134 also engaged in more active means of thwarting the investigation. The local's Financial Secretary, Ed Ryan, actively attempted to obstruct the investigation. He tried to delay the special committee's meetings and also instructed union employees not to cooperate with it. Despite the lack of cooperation from certain elements of Local 134's leadership, the special committee discovered evidence that the local's executive board had issued hundreds of "A" cards to electricians who were reportedly employed by newly organized, formerly non-union, employers. The special

---

**2.** This summary of the facts relies on the facts alleged in Duffy's complaint which are taken as true for purposes of this motion. *See Gregory v. Nunn,* 895 F.2d 413 (7th Cir.1990).

investigative committee, however, also uncovered evidence that the claim that the credentials were being issued to newly organized employees was simply false.

The executive board's circumvention of the established procedures for issuing "A" cards flooded the labor market with large numbers of inexperienced but credentialed electricians. These electricians were then placed with employers without going through the union's seniority board. As a result of the scheme to issue unauthorized credentials and then bypass the seniority board, employment opportunities were greatly reduced for properly certified Local 134 journeymen electricians awaiting job referrals through the seniority board.

The scheme affected most adversely job opportunities for minority class members covered by a consent decree in *Ridgeway, et al. v. International Brotherhood of Electrical Workers, No. 134, et al.,* 74 C 3045 (N.D.Ill). The *Ridgeway* consent decree required the union to train minority electricians through the apprentice program and also to provide tests for experienced electricians working on "A" probationary permits. Moreover, ignoring the seniority board in placing electricians in employment further undermined the effectiveness of the remedial goals of the decree.

On April 28, 1989, Duffy reported the findings of the special investigative committee to Conway. In response, Conway sent a letter in which he informed Duffy that he had met with certain officers of the local and found "no major areas of concern." Conway also wrote, "Had you been privileged to have observed documentation shown me, I am sure you would come to a similar conclusion," but never offered to share with Duffy the documentation to which he was referring.

Despite Conway's letter asserting that nothing was wrong, the special investigative committee reported its findings to an alarmed local membership at a May, 1989 meeting. The next month, when Local 134 held its elections, the membership voted out of office several officers implicated by the investigation and at the same time elected Duffy to the executive board.

In July, 1989, Duffy was elected chairman of the new executive board and, as chairman, heightened the investigation of the prior board's improper issuance of "A" cards. The special investigative committee hired an attorney and an investigator, and both the special committee and the executive board began interviewing hundreds of electricians who had received their credentials directly from the executive board.

IBEW did not approve of the actions taken by Duffy and others on Local 134's new executive board. It ordered Duffy to halt the investigation and to turn over his work product. The IBEW also attempted to persuade Duffy and the executive board to drop all their charges. In April of 1990, IBEW placed the local in trusteeship.

Immediately following imposition of the trusteeship, IBEW vice-president Conway removed Duffy from his appointed position as business manager. Duffy alleges that Conway removed Duffy with the knowledge that the removal would force his retirement from the industry and, consequently, his resignation from his position on the executive board.

The trusteeship remained in place until May, 1991. During the trusteeship, no further investigation was made into the wrongful issuance of "A" cards by the prior executive board. When the trusteeship was lifted, IBEW restored all former local officers except Duffy and Tim Bresnahan (who had resigned as Business Manager a year earlier). William Husko was appointed Acting Business Manager by the IBEW when it lifted the trusteeship. Duffy requested of Husko to reinstate him as well. Husko answered that as a condition for ending the trusteeship, IBEW had insisted that Local 134 not reinstate Duffy. Local 134 decided not to reinstate Duffy.

Duffy alleges that Defendants' actions in removing him from office, calling off the special investigation and imposing the trusteeship interfered with his rights under the LMRDA. He seeks comprehensive relief including his reinstatement to the offices of business representative and chair-

man of the local's executive board. He also seeks authorization to proceed with the investigation of the "A" card scheme as well as monetary relief.

## Discussion

Local 134 has moved to dismiss the action against it pursuant to Rule 12(b)(6). According to Local 134, although the complaint may state a cause of action against IBEW, it does not allege facts implicating the local in any violation of the LMRDA.

### A. *Standard of Review*

A motion to dismiss will only be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Only if the allegations of the complaint, and all reasonable inferences drawn therefrom, could not support any cause of action may this court grant Local 134's motion. Moreover, "a complaint is not required to allege all, or any, of the facts logically entailed by the claim.... A plaintiff does not have to plead evidence." *American Nurses' Ass'n v. State of Illinois,* 783 F.2d 716, 727 (7th Cir.1986). Rather, a complaint need only "indicate the nature of plaintiff's claim with only enough specificity to enable the parties to determine the preclusive effect of a judgment disposing of the claim." *Id.* at 723.

**3.** § 101(a)(1), 29 U.S.C. § 411(a)(1), provides: Equal rights. Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

**4.** § 101(a)(2), 29 U.S.C. § 411(a)(2), provides: Freedom of speech and assembly. Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates before the meeting, subject

### B. *Duffy's Complaint States a Cause of Action*

Duffy alleges that he was denied rights protected under §§ 101(a)(1)[3], 101(a)(2)[4] and 609[5] of the LMRDA. Local 134 contends that Duffy's complaint does not allege facts necessary to implicate the local in any LMRDA violations.

Duffy's complaint, however, is sufficient to put Local 134 on notice that Duffy is challenging its obstruction of his "A" card investigation and its complicity in disciplining him. Rule 8(a)(2) merely requires the complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." As noted above, the complaint does not need to allege every fact giving rise to the claim. *See American Nurses' Ass'n v. State of Illinois,* 783 F.2d 716 (7th Cir.1986).

Moreover, the court's reading of the complaint finds no dearth of specific factual allegations relating to Local 134's conduct bearing upon the local's alleged violations of §§ 101(a)(1) and 101(a)(2). Duffy alleges that certain officers of Local 134, including the Business Manager, refused to participate in the special "A" card investigation. He also alleges that the Financial Secretary took active steps to obstruct the investigation, by attempting to delay meetings and by instructing union staff not to cooperate. Moreover, the complaint brings into issue an alleged meeting between Conway (IBEW's vice-president) and certain officers of the local, a meeting which Conway relied

to the organization's established and reasonable rules pertaining to the conduct of meetings. Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

**5.** § 609, 29 U.S.C. § 529, provides:
It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this act.

upon in assuring Duffy that the charges of improper issuance of "A" cards raised "no major areas of concern."

The complaint also alleges that the IBEW removed Duffy from his appointed position of business representative and forced him to resign his elected position on the executive board. The complaint then indicates (in ¶ 18) that Local 134 agreed with IBEW not to reinstate Duffy to his former positions as a condition for IBEW's lifting the trusteeship.

Local 134 argues, however, that refusing to reinstate Duffy to his appointed position of business representative and to his elected position on the executive board does not violate the LMRDA. In support, the local cites *Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982).

Local 134's refusal to reinstate Duffy to his elected position raises issues different from its refusal to reinstate him to his appointed position. *Finnegan v. Leu* does not address removal from office of an *elected* union officer. Instead, the relevant case is *Sheet Metal Workers v. Lynn*, 488 U.S. 347, 109 S.Ct. 639, 102 L.Ed.2d 700 (1988). In *Sheet Metal Workers*, the Supreme Court ruled that a trustee's retaliatory removal of an elected union official violates § 101 of the LMRDA. Thus, under *Sheet Metal Workers*, Local 134's alleged refusal to return Duffy to his elected position on the executive board also constitutes a violation of § 101. Although *Sheet Metal Workers* did not reach the issue of whether the retaliatory removal of an elected official violates § 609 as well as § 101, *see id.* at 353 n. 5, 109 S.Ct. at 644 n. 5, this court rules that the allegations regarding Local 134's refusal to reinstate Duffy to his elected position also state a violation of § 609.

The *Finnegan* case does address the question of whether Local 134's failure to reinstate Duffy to his *appointed* position states a claim under the LMRDA. *Finnegan* presented the question of whether the discharge of a union's appointed business agents by the union president, following his election over the candidate supported by the business agents, violated the LMRDA. The Court held that discharge from a position as union employee does not constitute "discipline" within the meaning of § 609. It reasoned that a union president should be able to choose his staff to make sure that he is surrounded with people who will support his program and willingly carry out his directives. Accordingly, Local 134's refusal to reinstate Duffy to the appointed position of business representative was not in violation of § 609.

The Court in *Finnegan,* however, acknowledged that although firing a union employee is not "discipline" within the meaning of § 609, it may amount to a violation of that individual's rights under another section of the LMRDA. *See id.* at 440–441, 102 S.Ct. at 1873. Citing *Schonfeld v. Penza,* 477 F.2d 899 (2d Cir.1973), the Supreme Court noted that the power to remove a union employee from office may be a means of suppressing dissent either through retaliation or intimidation. *See id.* at 441, 102 S.Ct. at 1873. The Court declined to rule on whether such an effort to suppress dissent might give rise to a cause of action under the LMRDA for violating the union member's rights to equal treatment or free speech. *See id.*

In this case, the complaint alleges that Duffy's removal and the subsequent failure to reinstate him were part of a plan to stifle dissent. The complaint alleges that both defendants engaged in acts calculated to obstruct an investigation of misconduct on the part of members of the local's executive board. Defendants' interference in the investigation and the exclusion of Duffy from office were alleged to be elements of a scheme to silence Duffy and to prevent Local 134 members from the free exercise of their LMRDA rights to participate in the governance of their union.

The Seventh Circuit has not yet ruled on whether *Finnegan v. Leu* bars suits under the LMRDA by union employees who claim they have been disciplined as a means of suppressing dissent. Other circuits, however, apparently have recognized the *Schonfeld* exception to *Finnegan v. Leu* and have indicated that the LMRDA does not permit the disciplining of union employ-

ees when done as a means of stifling dissent. *See, e.g., Adams–Lundy v. Ass'n of Professional Flight Attendants*, 731 F.2d 1154, 1158 (5th Cir.1984). This court rules that while Local 134's refusal to reinstate Duffy to the appointed position of business representative was not "discipline" within the meaning of § 609, that refusal may have been in violation of § 101.

In summary, therefore, this court rules that Duffy's complaint states a cause of action under 29 U.S.C. § 412. Duffy has sufficiently pleaded that his rights under §§ 101 and 609 have been violated.

### Conclusion

For the foregoing reasons, Local 134's motion to dismiss is denied.