**Frank STROUD, Floyd Stroud, Anthony Martinez, Robert Fiascone, Irma Aguilar, Plaintiffs,**

**v.**

**Joseph. V. SENESE, Phil V. Cappitelli, Robert Mondo, Gladys Lundberg, John Oliverio, Pablo Rodriguez, Don Pennington, James DiVito, Lem Redmond, Landis Wallace, Anthony Monaco, Phil F. Cappitelli, Vince Gregonsac, Ronald Hendrichs, Mary Anne Herman, Sue Schriener, National Production Workers Union, Production Workers Union of Chicago and Vicinity Local 707, and Truck Drivers, Chauffeurs, Warehousemen and Helpers Unions Local 707, Defendants.**

**No. 93 C 1709.**

United States District Court, N.D. Illinois, E.D.

Sept. 3, 1993.

Terence J. Mahoney, Neville, Pappas & Mahoney, Anthony Pinelli, Anthony Pinelli, Attorney at Law, Thomas Michael Breen, Martin, Breen & Merrick, Chicago, IL, for plaintiffs.

Mark K. Schoenfield, Jerome H. Torshen, Phillip Michael Schreiber, Torshen, Schoenfield & Spreyer, Ltd., Chicago, IL, for defendant Joseph V. Senese.

James R. Meltreger, Onesto, Giglio, Meltreger & Associates, Patrick Joseph Calihan, Calihan & Lavin, Anthony J. Onesto, Anthony J. Onesto & Associates, Ltd., Chicago, IL, for defendants Phil V. Cappitelli, John Oliverio, Pablo Rodriguez, Don Pennington, James DiVito, Lem Redmond, Laudis Wallace, Anthony Monaco, Phil F. Cappitelli, Vince Gregonsac, Ronald Hendrichs, Sue Schriener, National Production Workers Union, Local 707 Truck Drivers, Chauffeurs, Warehousemen and Helpers Unions and Local 707 Production Workers Union of Chicago and Vicinity.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendants Joseph V. Senese's ("Senese"), National Production Workers Union's ("the National"), Production Workers Union of Chicago and Vicinity Local 707's ("PW Local"), and Truck Drivers, Chauffeurs, Warehousemen and Helpers Unions Local 707's ("Drivers Local") Motion to Dismiss the claims against them pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). For the reasons stated below, the motion is granted in part and denied in part.

### I. Background

This suit is based on an employment dispute between plaintiffs as employees and/or officers of defendant unions and the defendant unions and officers thereof. Each plaintiff was at one time employed by one or more defendant union. Between December 1992 and March 1993 each plaintiff was allegedly removed from his or her employment position by one or all of the defendants, as set out more fully below. Based on these involuntary changes in employment status, the plaintiffs brought suit alleging that defendants violated sections 101 and 102 of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 411 and 412. For the alleged violations, plaintiffs seek an injunction preventing similar actions in the future, an injunction restoring plaintiffs to their former positions, compensatory damages and punitive damages.

Defendants Senese, the National, PW Local and Drivers Local now move to dismiss the claims against them for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted.

### II. Facts [1]

Defendants PW Local and Drivers Local are subordinate union affiliates of defendant the National Production Workers Union. The Constitution of the National provides for an Executive Board composed of seven officers ("the National Board") comprised of, at the relevant times, defendant Joseph V. Senese ("Senese"), President, plaintiff Frank Stroud, Vice President, defendant Robert Mondo ("Mondo"), Secretary–Treasurer, defendant Gladys Lundberg ("Lundberg"), Recording Secretary, defendant Phil V. Cappitelli, Trustee, defendant Pablo Rodriguez ("Rodriguez"), Trustee, and defendant John Oliverio ("Oliverio"), Trustee.

The Constitution of PW Local provides for an Executive Board of seven officers comprised of, at the relevant times, defendant Anthony Monaco ("Monaco"), President, defendant James DiVito ("DiVito"), Vice President, defendant Phil F. Cappitelli, Secretary–Treasurer, defendant Vince Gregonsac ("Gregonsac"), Recording Secretary, defendant

---

1. All facts stated herein are those alleged by plaintiffs and are taken as true for purposes of this motion to dismiss. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1032–33 (7th Cir. 1987).

Rodriguez, Trustee, defendant Ronald Hendrichs ("Hendrichs"), Trustee, and plaintiff Floyd Stroud, Trustee.

The Constitution of Drivers Local provides for an Executive Board of seven officers comprised of, at the relevant times, defendant Phil V. Cappitelli, President, defendant Don Pennington ("Pennington"), Vice President, plaintiff Robert J. Fiascone ("Fiascone"), Secretary–Treasurer, plaintiff Anthony Martinez ("Martinez"), Recording Secretary, defendant DiVito, Trustee, defendant Lem Redmond ("Redmond"), Trustee, and defendant Landis Wallace ("Wallace"), Trustee. Defendant Mary Anne Herman ("Herman") is the current Recording Secretary of the National. Defendant Sue Schriener ("Schriener") is a union member employed as the Controller by the National. Lastly, plaintiff Irma Aguilar ("Aguilar") was employed as an office manager/business agent liaison, apparently by Drivers Local.[2]

The National sponsors, through local union contributions, trust funds which provide medical insurance and retirement income for its members. The National Production Workers Insurance Trust Fund ("Insurance Fund") provides the medical insurance. The Insurance Fund has a contract with an entity known as Chicago H.M.O. to provide medical benefits to approximately 2,200 members. The National Production Workers Union Severance Trust Fund ("Severance Fund") provides retirement benefits to members. All union officers and employees participate in the Severance Fund and Insurance Fund through their employment. Defendant Mondo serves as Plan Manager of both funds.

In 1991, the National had gross receipts of $1,117,203.00. That same year, the National spent $483,285.00 for security for Senese and his family, and $192,192.00 for Senese's salary and expenses. On September 16, 1992, certified public accountants Jeffrey W. Krol & Associates wrote to Senese explaining the dire financial picture of the National. On September 21, 1992, Senese sent a memorandum to all officers, agents and staff of the National informing all recipients that immediate salary cuts had to be made and that these cuts would be reflected in the next payroll. Plaintiff Frank Stroud requested a meeting of the Executive Board[3] to discuss this action. Senese declined to convene such a meeting.

In the same vein, the National's Constitution requires the Secretary–Treasurer to submit financial reports to the Executive Board. No such reports were submitted in 1991 or in 1992. Furthermore, throughout 1992, and in previous years, defendants Senese and Mondo directed all Union officers to implement the Chicago H.M.O. plan for insurance coverage in contracts. In the Fall of 1992, plaintiffs Stroud[4] and Martinez negotiated a contract with Yellow Cab Co. which included an insurance plan other than Chicago H.M.O. On November 29, 1992 Martinez was reprimanded by Senese and Monaco for failing to include Chicago H.M.O. in the contract. Furthermore, Senese told Martinez that his association with Frank Stroud would be cause for discharge. Sometime in 1992, plaintiff Stroud advised defendant Senese that members of the union were displeased with Chicago H.M.O. services. Senese responded that Chicago H.M.O. must be included in all contracts.

On December 15, 1992 defendant Phil V. Cappitelli advised plaintiff Martinez that his salary was to be reduced by 50% and that all accounts were taken away from him "since you are having a hard time understanding who you work for." On December 18, 1992, the Drivers Local Executive Board convened to discuss the disciplining of Martinez. No written charges were provided to Martinez prior to the meeting. Defendants Phil V. Cappitelli, DiVito, Pennington, Redmond and Wallace voted to cut Martinez's salary by 50% for four days and permanently by $200.00 per month. Plaintiff Fiascone, the

---

**2.** The Complaint is not always clear as to which union it refers. In this instance, the allegation accompanies those concerning Drivers Local.

**3.** It is not clear to which Executive Board the Complaint refers. We assume the National Board was intended.

**4.** The Complaint does not specify which Stroud. We assume, based on the connotations of the Complaint, that Frank Stroud is intended.

only other voting Board member present, voted against the sanction. During the meeting, Cappitelli and Pennington told Martinez that Senese had ordered them to punish Martinez.

Martinez subsequently received a telephone call from Phil V. Cappitelli who informed him that a second meeting would be held on December 21, 1992. On that date, the same group of Drivers Local officers reconvened. Again, no written charges were provided to Martinez. The Executive Board voted to terminate Martinez. Plaintiff Fiascone voted against the termination. On February 23, 1993, after Martinez continued to come in to work and use his desk, Phil V. Cappitelli told Martinez to clear out his desk and go home.

On February 24, 1993, the Executive Board published a memorandum stating that Martinez and Fiascone were no longer to serve as business agents for the union. Fiascone was not provided with any written charges of misconduct regarding his performance. No Executive Board meeting was held regarding termination of Fiascone.

In the interim period after the December 21 disciplining of Martinez, plaintiff Stroud[5] contacted Senese to discuss Martinez. Senese refused to discuss it. On January 21, 1993, Stroud filed charges against defendants Senese, Mondo and Phil V. Cappitelli pursuant to the provisions of the Constitution and by-laws of the National. On February 1, 1993 Stroud amended those charges. A trial date was set for April 15, 1993.

Following the filing of these charges, defendant Monaco ordered plaintiff Floyd Stroud, son of plaintiff Frank Stroud, to contact an attorney who represented the National. The attorney asked Floyd "whose side he was on" in the dispute between Frank Stroud and the Executive Board. Floyd Stroud indicated that he believed Frank Stroud was doing the right thing. Subsequently, defendant Monaco told Floyd Stroud that he was fired as a business agent and a notice dated February 24, 1993 to that effect was circulat-

ed to all union members. On that same date, another notice stating that Frank Stroud had no authority to act as a business agent was circulated to all members. All three notices regarding plaintiffs Strouds, Martinez and Fiascone were published in response to a February 16, 1993 notice circulated to all union officers by Frank Stroud of an informational meeting to be held on March 14, 1993.

Furthermore, on February 24, 1993, plaintiff Aguilar was notified that her employment was terminated. She was so advised because of defendant Senese's perception that she was loyal to Frank Stroud.

Meanwhile, prior to March 5, 1993, Frank Stroud had made numerous inquiries of the Executive Board, Trust Funds, and attorneys and accountants employed by the union for information relative to the charges he had filed against the National officers. As of the date of the filing of this action, only Trust Fund Forms 5500[6] had been provided to him. An attorney representing the union told Stroud that a trial would be held on his claims but that no court reporter would be allowed and no record would be made. On March 3, 1993, the National Executive Board was convened to discuss rescheduling the designated April 15, 1993 trial date. At this meeting, defendant Senese introduced proposed resolutions which called for striking the trial date because a quorum of disinterested officers did not exist. These resolutions referred the charges filed by Frank Stroud to the next convention of the National Union, scheduled for June 1995. All National officers except for Frank Stroud voted for the resolutions which were recorded as passed. The April 15, 1993 date for trial of Frank Stroud's charges was cancelled.

During the period between December 1, 1992 and March 5, 1993, plaintiff Stroud made numerous attempts to communicate with other National officers, including Senese, for the purpose of stating his positions on the Union's financial situation. Plaintiff[7]

---

5. Again, the Complaint does not specify to which Stroud it refers, but we assume Frank Stroud.

6. Plaintiffs do not describe the content of these forms.

7. Plaintiffs do not specify which plaintiff but it is assumed the Complaint refers here to Frank Stroud.

also issued notices to members and arranged an informational meeting of members for March 14, 1993. This meeting was convened and approximately 300 members appeared.

On March 5, 1993, defendant Mary Anne Herman authored a letter in which she purported to replace Gladys Lundberg as Recording Secretary of the National Union. The letter was addressed to plaintiff Frank Stroud and contained charges against him filed by defendant Sue Schriener. Stroud believes these claims are false and were filed in retaliation for plaintiff's exercise of his right to file charges of his own. On March 10, 1993, Senese suspended Frank Stroud from his position of National Vice President.

According to the plaintiffs, all of the above actions were "taken for the purpose of constructively discharging plaintiffs as union officers in violation of 29 U.S.C. § 411(a)(1), (2), (4) and (5)." Compl., at p. 12, ¶ 78. Furthermore, according to plaintiffs, "the above-described actions have been taken for the purpose of illegal retaliation against plaintiffs ...". *Id.*, ¶ 79. Plaintiffs also aver that these allegations show that no internal union procedures exist to resolve this dispute. Plaintiffs, thus, request that this court conduct a hearing regarding the handling of the charges originally brought by Frank Stroud. They also request an injunction preventing similar actions in the future, an injunction restoring their "rights and privileges" as officers and employees and all appropriate damages.

### III. *Motion to Dismiss*

Defendants Senese, the National, PW Local and Drivers Local ("defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss this action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. In support, defendants argue that § 101 does not provide plaintiffs with a cause of action, that plaintiffs have failed to exhaust internal union remedies, that the court has no subject matter jurisdiction because the plaintiffs are not properly before the court, that injunctive relief cannot be granted and that the Complaint should be dismissed because it was not signed by an attorney.

### A. *§ 101 of the LMRDA, 29 U.S.C. § 411*

In their first argument in their Motion to Dismiss, defendants argue that section 101 does not provide plaintiffs with a cause of action. Entitled "Bill of Rights", § 101 enumerates certain rights and privileges to be afforded all members of labor unions, not limited to the rights to vote in union elections, to freely meet and associate with other members, to express opinions and to be free from discipline without due process. *See* 29 U.S.C. § 411(a)(1–5). Complementing that section, section 102 provides a civil cause of action to "[a]ny person whose rights secured by the provisions of this subchapter have been infringed." 29 U.S.C. § 412. According to defendants, section 101 protects membership in a union, not employment in a union. Therefore, according to defendants, because the plaintiffs lost only employment rights, not any membership rights, in their respective unions, section 101 cannot provide a cause of action. In support, defendants cite *Finnegan v. Leu,* 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982).

In *Finnegan,* the Supreme Court addressed "whether the discharge of a union's appointed business agents by the union president, following his election over the candidate supported by the business agents, violated" the LMRDA. 456 U.S. at 432, 102 S.Ct. at 1869. The Court held that it did not. Defendant there had just been elected president of his Local. He shortly thereafter discharged all the previously appointed business agents because "he felt the agents were loyal to [the prior president], not to him". *Id.,* at 434, 102 S.Ct. at 1869. After discussing the text of the LMRDA, the Court held that "the ability of an elected union president to select his own administrators is an integral part" of the democratic union process. *Id.,* at 431, 102 S.Ct. at 1873. Therefore, according to the Court, the LMRDA did not provide a cause of action for the systematic discharge of patronage employees. "[W]hatever limits Title I [of the LMRDA, 29 U.S.C. §§ 411–415] places on a union's authority to utilize dismissal from union office as part of a purposeful and deliberate attempt ... to suppress dissent within the union, ... it does

not restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own." *Id.*, at 441, 102 S.Ct. at 1873. Any question as to whether § 102 of the LMRDA provided a cause of action for retaliatory discharge of non-policymaking, non-confidential employees, however, was expressly left open. *Id.*, at 441 n. 11, 102 S.Ct. at 1873 n. 11.

Subsequently, in 1989, in a case conspicuously not cited by defendants here, the Supreme Court addressed the related question of whether § 102 provides a cause of action for retaliatory discharge of an elected union official.[8] In *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989), the Supreme Court held that removal of an *elected* union business agent by a union Trustee, in retaliation for exercising his rights protected by the LMRDA, violated section 102. There, plaintiff Lynn was elected by union members to a 3–year term as business representative of defendant Local 75 of the union. Lynn organized other union members to oppose and demonstrate against the spending habits of the Local's officers. Eventually, Lynn was discharged from his elected position "because of his outspoken opposition to the dues increase proposed by the union officers." *Lynn*, 488 U.S. at 350, 109 S.Ct. at 642.

After distinguishing *Finnegan*, the Court held that "Lynn's retaliatory removal stated a cause of action under § 102", *Id.*, at 355, 109 S.Ct. at 645, because "[t]he consequences of the removal of an elected official are much different" than the consequences of removing appointed officials. *Id.*, at 354, 109 S.Ct. at 644. When an elected union representative is removed from office in retaliation for exercising his § 101 rights, "the union members are denied the representative of their choice." *Id.* Disallowing a cause of action in such a case would undermine "the LMRDA's basic objective: to ensure that unions are democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections." *Id.*, at

354, 109 S.Ct. at 644. After *Finnegan* and *Lynn*, then, § 102 provides a cause of action for retaliatory discharge of elected officials, but not for patronage employees, because each affects the democratic process of a union differently. Whether or not non-confidential, non-policymaking employees may use § 102 remains undecided. *See Lynn*, 488 U.S. at 355, n.7, 109 S.Ct. at 645 n.7 (reasserting that whether or not § 102 protects "nonpolicymaking and nonconfidential employees" is an open question); *Duffy v. IBEW, Local No. 134*, 780 F.Supp. 1185, 1189 (N.D.Ill.1991) (noting that the Seventh Circuit has not addressed this question).

Here, plaintiff Frank Stroud has alleged sufficient facts to state a cause of action under § 102. Plaintiff Frank Stroud alleges that he was "suspended from his position of National Vice–President" in retaliation for exercising his rights protected by the LMRDA. Compl., at p. 11, ¶¶ 76, 77. Although he does not directly allege that he was elected to the position of National Vice President, defendants do not argue otherwise and the National's Constitution states that it is an elected position. We will, therefore, make this inference. *See Columbus, Cuneo, Cabrini Medical Center v. Travelers Ins. Co.*, 725 F.Supp. 396, 397 (N.D.Ill.1989) ("On a motion to dismiss, the allegations ... as well as the reasonable inferences ... are taken as true"). Furthermore, because he alleges that he was removed from an elected position, he need not allege that "his firing was part of a systematic effort to stifle dissent". *See Lynn*, 488 U.S. at 355 n. 7, 109 S.Ct. at 645 n. 7. Therefore, plaintiff Frank Stroud has alleged sufficient facts upon which relief may be granted.

▬ The allegations regarding the remaining plaintiffs, however, are not so clear. First, plaintiffs do not even allege that Aguilar is a union member. Plaintiffs "allege that [Aguilar] is a non-confidential employee", Mem. in Opp., at p. 2, and that she "was employed as an office manager/business

---

**8.** The court directs the defendants' attention to Illinois Rule of Professional Conduct 3.3(a)(3) which *requires* attorneys to disclose adverse legal authority not disclosed by opposing counsel, and to Federal Rule of Civil Procedure 11 which

requires reasonable inquiry into the law before filing any papers with the court. In the future, the attorneys should take cognizance of this admonition.

agent liaison." Compl., at p. 3. As such, she cannot state a claim for retaliatory discharge under the LMRDA. *See* 29 U.S.C. § 412 (securing rights of *members* of unions); *Finnegan,* 456 U.S. at 441, 102 S.Ct. at 1873. Second, plaintiffs Martinez, Floyd Stroud and Fiascone have failed to adequately allege from what type of position each was removed. Although the court, as with Frank Stroud above, can infer that these plaintiffs held elected positions, none alleges that he was discharged from an elected position. The Complaint alleges only that Floyd Stroud, Martinez and Fiascone were discharged from their duties as business agents. Compl., at pp. 7–9, ¶¶ 35–59. Neither the plaintiffs nor defendants aver that these positions are purely patronage positions, which, under *Finnegan* would not be protected, or whether they are non-policymaking, non-confidential positions which may be protected. *See Finnegan,* 456 U.S. at 440–41, 102 S.Ct. at 1873 ("We need not decide whether the retaliatory discharge of a union member from union office ... might ever give rise to cause of action under § 102").

Analogous cases decided after *Finnegan,* however, have held that union members who were discharged from unelected positions may state a claim for retaliatory discharge under § 102 if the plaintiff can show that his "firing was part of a pattern of intimidation and stifled dissent". *Adams–Lundy v. Association of Professional Flight Attendants,* 731 F.2d 1154, 1158–59 (5th Cir.1984); *accord Johnson v. Kay,* 860 F.2d 529, 536 (2d Cir.1988) (allowing a cause of action under § 102 where "there is a deliberate attempt by union officials to suppress dissent within the union"); *Duffy v. IBEW, Local No. 134,* 780 F.Supp. 1185, 1189–90 (N.D.Ill.1991) (ousted, unelected union official stated § 102 claim); *Glover v. Ossey,* No. 93 C 0421, 1993 WL 303120, at *3 (N.D.Ill. Aug. 5, 1993); *see also Franza v. International Bhd. of Teamsters, Local 671,* 869 F.2d 41, 48 (2d Cir.1989) ("the test is not whether the employee is or is not in a policymaking position, rather the question is whether membership rights in the union were directly infringed by action taken with respect to a union member's employment status."). Therefore, for these three plaintiffs to state a cause of action under § 102, they must allege that the adverse action directed at them was part of a pattern carried out by defendants to stifle dissent within the union. As noted by the court in *Glover,* plaintiffs face an "uphill battle" in proving such a scheme. *See Glover,* 1993 WL 303120, at *3.

At this point, plaintiffs Floyd Stroud, Martinez, and Fiascone have adequately alleged that they were disciplined as a result of a purposeful plan to squelch dissent. A few of the more egregious allegations suffice to show that plaintiffs may be able to demonstrate a purposeful plan by defendants. First, after Frank Stroud questioned Senese's expenditures, Senese told Martinez that his association with Frank Stroud would be grounds for dismissal. Compl., at p. 6, ¶ 32. Soon thereafter, Martinez's salary was cut and he subsequently was terminated from his job. *Id.,* at pp. 6–8, ¶ 34–48. After plaintiff Fiascone voted against disciplining Martinez, he was discharged from his job with no prior notice. *Id.,* at p. 8, ¶ 48. Next, after Frank Stroud filed charges against the National officers, plaintiff Floyd Stroud was asked to declare "whose side he was on" in the dispute. *Id.,* at p. 9, ¶ 57. For his loyalty to his father, he was fired. Defendants also instituted charges against plaintiff Frank Stroud allegedly in retaliation for exercising his rights to speak out against union management. *Id.,* at p. 11, ¶¶ 75–76. Furthermore, plaintiffs allege that the above, and other, action was taken

> for the purpose of illegal retaliation against the plaintiffs for attempting to exercise their rights as union members as guaranteed by 29 U.S.C. § 411....

*Id.,* at p. 12, ¶ 79. These allegations are sufficient to withstand defendants' Motion to Dismiss. Defendants have not shown that plaintiffs can prove no set of facts in support of their claim. As such, defendants' Motion to Dismiss is denied as to all plaintiffs except Irma Aguilar. Because Aguilar is not a member of a union, the LMRDA does not apply to her and she can not state a claim under § 102. All claims regarding Irma Aguilar are dismissed. The remainder of defendants' Motion to Dismiss will be dis-

cussed as it pertains to all plaintiffs except Irma Aguilar.

## B. *Subject Matter Jurisdiction*

Defendants next argue that the Complaint must be dismissed because this court lacks subject matter jurisdiction to hear the claims of plaintiffs Floyd Stroud, Martinez and Fiascone. Defendants' argument is essentially the same as that above—because plaintiffs fail to state a claim under the LMRDA, this court lacks jurisdiction. This argument is denied as moot because we held that plaintiffs' allegations are sufficient to state a claim.

## C. *Failure to Exhaust Internal Union Remedies*

■ Citing Section 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4), defendants next argue that this court lacks subject matter jurisdiction because plaintiffs have failed to exhaust their internal union remedies. That section states that any union member plaintiff asserting a claim under the LMRDA "*may* be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) before instituting legal ... proceedings". 29 U.S.C. § 411(a)(4) (emphasis added). This determination, however, ultimately lies within the discretion of the court. *Bee v. Local 719, United Auto Workers*, 744 F.Supp. 835, 837 (N.D.Ill.1990). "Among the factors to be considered are whether the internal remedies are reasonable and fair, whether exhaustion would be futile and whether requiring the plaintiff to pursue internal remedies would create an unreasonable delay." *Bee*, 744 F.Supp. at 837. In this case, after considering all relevant factors, we hold that exhaustion of internal remedies is not required.

First, plaintiffs need not invoke internal union procedures if those procedures would be futile. *Winter v. Local Union No. 639, Int'l Bhd. of Teamsters*, 569 F.2d 146, 148 (D.C.Cir.1977); *Foy v. Norfolk & W. R.R. Co.*, 377 F.2d 243, 246 (4th Cir.1967). It is correct that plaintiffs do not allege that they invoked their internal union remedies to redress these charges. They do allege, however, that "it is impossible to have a fair trial regarding charges of misconduct against National officers". Compl., at p. 13, ¶ 82. They also allege that defendants' "actions ... demonstrate that no internal union procedure exists to resolve these issues". *Id.*, at p. 13, ¶ 83. The court agrees. Based on the allegations presented, the court believes that plaintiffs need not exhaust internal union remedies because the procedures would be futile. *See Yager v. Carey*, No. 93–1054, 1993 WL 328128 slip op. at 10–13 (D.D.C. June 29, 1993) (finding internal union procedures inadequate in factually similar situation). The court also believes that the alternative procedure proposed by the defendants requires an inordinate amount of time and is, thus, unreasonable.

Plaintiffs allege that they were discharged from their positions for perceived disloyalty to Senese and current union management. Plaintiffs further allege that Executive Board members of the National, PW Local and Drivers Local are all loyal to Senese and abide by his directives and have participated in a plan to stifle dissent. *See* Compl., at p. 7, ¶ 40. The internal union procedures do not adequately provide for such a scenario. The National Constitution provides for internal remedies of a trial before the Local Executive Board of all charges levied against Local officers. Constitution of the National Production Workers Union, at pp. 30–31. After such trial, the dissatisfied party may appeal the decision to the National Executive Board. *Id.*, at p. 31. Any party dissatisfied with a decision there can appeal to the next National convention. *Id.* All charges against National officers are referred to the National Executive Board on which the accused and accuser will not be qualified to serve. *Id.*, at p. 31. The dissatisfied party can then appeal to the next National convention. *Id.*, at p. 32.

These provisions in the National's Constitution do not address the situation presented here. The National Constitution provides that the Executive officers sit in judgment of the accused. However, here the National and respective Local officers are the accused, and are thus ineligible. No express provision is made where all the officers are either accused or accusers. And while referral of

this matter to the next National Convention seems to be a logical option, it is inadequate. Plaintiffs have been discharged from their employment and, thus, their livelihood has been suspended. As alleged by plaintiffs, and not refuted by defendants, the next National Convention will be held in June 1995. Plaintiffs cannot be expected to wait two years to be heard. *See, e.g.,* 29 U.S.C. § 411(a)(4) (limiting "reasonable hearing procedures" to those occurring within four months). Thus, internal procedures expressly called for in the defendants' Constitution have been shown to be futile and the alternative remedy proposed by defendants is unreasonable. *See Wood v. Dennis,* 489 F.2d 849, 856–57 (7th Cir.1973) (not requiring exhaustion of internal remedies); *Yager,* No. 93–1054 at 13, 1993 WL 328128 (same). As such, plaintiffs need not exhaust internal union remedies. This portion of defendants' Motion to Dismiss is denied.

### D. *Injunctive Relief*

■ The first argument made by defendants in support of their assertion that injunctive relief is inappropriate is that "plaintiffs are not properly before this court" because they have failed to state a claim upon which relief can be granted. Mem. in Supp. of Mot. to Dismiss, at pp. 12–13. This argument has been addressed and rejected above.

Next, defendants argue that the request for injunctive relief against future LMRDA violations should be dismissed because plaintiffs are attempting to litigate the rights of other union members for which they lack standing. This argument is rejected. Section 102 of the LMRDA, 29 U.S.C. § 412, expressly provides for injunctive relief and any other appropriate relief. *See* 29 U.S.C. § 412 ("Any person whose rights ... have been infringed ... may bring a civil action ... for such relief (including injunctions) as may be appropriate"). At this point in this case, the court cannot decide what relief, if any, "may be appropriate". Furthermore, other courts have found it appropriate to issue permanent injunctions on behalf of union members to prevent future violations of the LMRDA. *See Sheridan v. Liquor Salesmen's Union Local 2,* 303 F.Supp. 999, 1006 (S.D.N.Y.1969) (courts have power to enjoin even threatened violations of section 101); *Tirino v. Local 164, Bartenders and Hotel and Restaurant Employees Union,* 282 F.Supp. 809, 813–14 (E.D.N.Y.1968) (same). Where, as here, plaintiffs allege a pattern and practice of defendants violating Title I of the LMRDA, an injunction preventing similar acts may be appropriate. As such, plaintiffs' request for injunctive relief will not be dismissed. This portion of defendants' Motion to Dismiss is denied.

### E. *Complaint Not Signed by an Attorney*

■ In their final argument of the Motion to Dismiss, defendants argue that the Complaint should be dismissed because it is not signed by an attorney as required by Federal Rule of Civil Procedure 11. We do not believe that such a sanction is appropriate here where defendants have alleged no damages resulting from the technical defect. *See United States v. Kasuboski,* 834 F.2d 1345, 1348 (7th Cir.1987) ("In cases ... which do not involve the issue of sanctions for filing an unfounded motion, the failure to sign will not cause a motion to be stricken unless the adverse party has been severely prejudiced or misled by the failure to sign."). Furthermore, each plaintiff signed the Complaint. We will, however, require that a verbatim copy of the Complaint be signed by an attorney of record and filed with the court or that plaintiffs file an amended Complaint signed by plaintiffs' attorney. Plaintiffs have twenty days from their receipt of this Order within which to file a signed copy of the original Complaint or an amended Complaint. *See* FED.R.CIV.P. 11 (an unsigned pleading shall be stricken "unless it is signed promptly after the omission" is brought to light). Any future pleadings filed by plaintiffs must be signed by their attorney of record or be subject to *sua sponte* dismissal. *See* FED. R.CIV.P. 11; *Duke v. Crowell,* 120 F.R.D. 511 (W.D.Tenn.1988).

### CONCLUSION

Defendants' Motion to Dismiss is granted to the extent that all allegations regarding Irma Aguilar are dismissed without preju-

dice. The remainder of defendants' Motion to Dismiss is denied. Plaintiffs must file a verbatim copy of their original Complaint, signed by their attorney, or an amended Complaint signed by their attorney, within twenty days of their receipt of this Order.